UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                           )
UNITED STATES OF AMERICA,                  )
                                           )
                                           )
        v.                                 )
                                           )   Criminal No. 12-10367-DJC
                                           )
JUAN PABLO BERNABE,                        )
                                           )
        Defendant.                         )
_____ )

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                        **June 1, 2017**

**I.      Introduction**

Defendant Juan Pablo Bernabe ("Bernabe") has filed a *pro se* motion to vacate and correct his sentence pursuant to 28 U.S.C. § 2255, alleging he was denied effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution. D. 838. The government opposes this motion. D. 848. For the reasons discussed below, the Court DENIES Bernabe's § 2255 motion.

**II.     Standard of Review**

A prisoner may seek post-conviction relief under § 2255 if his sentence "(1) was imposed in violation of the Constitution; (2) was imposed by a court that lacked jurisdiction; (3) exceeded the statutory maximum; or (4) was otherwise subject to collateral attack." David v. United States, 134 F.3d 470, 474 (1st Cir. 1998). It is the prisoner's burden to make out a claim for such relief. Id.

### III. Factual and Procedural Background

#### A. <u>Investigation, Arrest and Plea</u>

On November 29, 2012, Bernabe and ten co-defendants were indicted on various drug charges. D. 3. A superseding indictment followed on April 17, 2014. D. 294. Bernabe was arrested on December 4, 2012 and pleaded guilty to the two charges against him on June 4, 2014. D. 787 at 20-21. The charges to which Bernabe pled guilty were conspiracy to possess with intent to distribute and to distribute cocaine in violation of 21 U.S.C. § 846 ("Count 1") and distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) ("Count 3"). D. 399 ¶ 1. The charges stemmed from a long-term investigation that included wiretaps of phones, seizure of cocaine, physical surveillance and execution of search warrants. D. 585 at 1.

The following facts are taken from the Presentence Report ("PSR") and the government's sentencing memorandum. D. 585. Federal agents began their investigation of Rahdames Pena ("Pena") in 2007 and identified other participants in a drug trafficking organization, including Bernabe. PSR ¶ 9. The investigation revealed a cocaine trafficking operation in which kilogram-quantities of cocaine were transported from the Dominican Republic and then distributed in New York and Massachusetts. PSR ¶ 11. In connection with a traffic stop involving one of the co-defendants, Salem police officers uncovered a drug ledger that included entries relating to Bernabe (referenced as "Palbin"), with one entry designating one kilogram of cocaine to Bernabe. PSR ¶ 14, 17. Another drug ledger found in the search of an office affiliated with the operation recorded instances where Bernabe owed and paid money to Pena. PSR ¶ 22. Overall, the investigation revealed a large-scale cocaine distribution operation with at least five, but not more than fifteen, kilograms attributable to Bernabe. PSR ¶ 53; D. 585 at 2.

On June 4, 2014, Bernabe pleaded guilty to Counts 1 and 3. D. 401. In his plea agreement with the government (the "Agreement"), the government recommended Bernabe's base offense level be 32 because at least five but not more than fifteen kilograms of cocaine were attributable to Bernabe. D. 399 ¶ 3. For the purposes of sentencing, however, Bernabe "reserve[d] the right to argue that fewer than 5 kilograms [were] attributable to him." D. 399 ¶ 3. The government further recommended that the offense level be reduced by three levels because Bernabe qualified for a reduction based on his acceptance of responsibility. Id. Finally, the government recommended Bernabe's offense level be reduced by two additional levels in light of a then pending amendment to the USSG Drug Quantity Table, and partially in exchange for Bernabe's appeal waiver, which is further discussed below. Id. ¶ 4.

The Agreement also included an appeal waiver. Id. ¶ 6. Specifically, Bernabe waived (1) "the right to challenge both his conviction and his sentence . . . on direct appeal" and (2) that he "may be able to argue in a future proceeding (collateral or otherwise), such as pursuant to a motion under 28 U.S.C. § 2255" that his sentence should be set aside or reduced. Id. ¶¶ 6(a), 6(b), 6(d). Bernabe, however, reserved the right to claim that his "lawyer was ineffective in connection with the negotiation of this plea agreement or the entry of [the] guilty plea." Id. ¶ 6(f).

During the change of plea hearing on June 4, 2014, Bernabe indicated that he "fully discussed the facts and circumstances of [his] case with [his] counsel." D. 787 at 7. Bernabe further indicated that he was "fully satisfied with the counsel, representation, and advice" given to him by counsel. Id. at 8. During this hearing, the Court explained that if the case had proceeded to trial the government would have had to prove every element of the counts against Bernabe, including the government's assertions of Bernabe's role in the organization. Id. at 17-18. The government then explained what they would have sought to prove at trial, id., including Bernabe's

3

role in the conspiracy and the amount of cocaine attributable to him. Defense counsel stated that Bernabe agreed with the government's characterization of Bernabe's role in the conspiracy, but also indicated that Bernabe reserved argument regarding the quantity of cocaine attributed to Bernabe for sentencing. D. 787 at 19; D. 399 ¶ 3. During the plea colloquy, the Court also explained to Bernabe that under the terms of the Agreement he waived certain rights to appeal the conviction and sentence. D. 787 at 14-15. Bernabe stated that he understood. Id. At the close of the hearing, the Court accepted Bernabe's guilty plea. Id. at 21.

### B. Sentencing Report and Hearing

On October 23, 2014, the Court held Bernabe's sentencing hearing. D. 582; D. 788 at 36. Probation determined that Bernabe was responsible for five to fifteen kilograms of cocaine, which rendered a base offense level of 32. PSR ¶ 54. The PSR determined that the total offense level (with acceptance of responsibility) was 29 for an advisory guideline sentencing range of 87 to 108 months. PSR ¶¶ 63, 111.

Defense counsel raised numerous objections to the PSR. Some objections related to Bernabe's disputed role in the cocaine operation and the amount of cocaine for which Bernabe should be held accountable. PSR at 28-32. Bernabe's position was that he "is accountable for at least five hundred grams but not more than 2 kilograms of cocaine." PSR at 32.

The government agreed with Probation regarding the 5 to 15 kilograms attributable to Bernabe. D. 585 at 2. The government, however, urged that the Court vary two levels down to reflect a then-pending amendment to the USSG. Id. at 7. Accordingly, with acceptance of responsibility, the government's position was that the total offense level was 27 for an advisory guideline sentencing range of 70 to 87 months. Id. at 7. The Government recommended a 78-month sentence. Id.

4

In the defendant's sentencing memorandum, defense counsel explained that "it is the position of the defendant, and his counsel, that the defendant has been unable to grasp the concept of acknowledging the extent of his criminal culpability with regard to the named co-defendants" while at the same time arguing that "the government has overstated his involvement with regard to quantities of drugs attributable to him." Id. at 1. The sentencing memorandum articulated Bernabe's position regarding the amount of cocaine attributable to him and stated that "he should be accountable for more than 2 but less than 3.5 kilograms of cocaine." Id. at 3. Counsel argued that Bernabe's base offense level should ultimately be 30. Id. at 3.

The Court disagreed with defense counsel's base offense level argument, adopted the government's version and concluded that the base offense level was 32, with an acceptance of responsibility, for a total offense level of 29. D. 788 at 23. In line with the government's recommendation of a two-level reduction due to the pending USSG amendments, the Court, as a matter of variance, accepted the government's argument that the appropriate GSR to consider would be 70-87 months. D. 788 at 35.

In announcing the sentence, the Court acknowledged that Bernabe was not the most culpable defendant in the enterprise, id. at 33, and explained that Bernabe would be sentenced with "regard[] to the sentences [the Court] imposed on other defendants . . . whose sentences or whose roles were similar" to that of Bernabe. Id. at 36. The Court disagreed with counsel's contention that Bernabe was "only an ounce distributor." See id. at 34. Id. The Court noted that even if it had accepted defense counsel's argument that base offense level should have been 30, the USSG would still be in the 70 to 87 months sentencing range after downward adjustments. Id. at 36. After considering all the 18 U.S.C. § 3553(a) factors, D. 586-1, the Court sentenced Bernabe to 68 months in prison. D. 788 at 38.

5

Bernabe has now filed this habeas motion, alleging that he was denied effective assistance of counsel during the sentencing phase of the proceedings. D. 838.

IV. **Discussion**

   A. <u>**Bernabe Waived His Right to Appeal His Sentence**</u>

A presentence waiver of appellate rights is enforceable if it is "knowing and voluntary" and does not result in a "miscarriage of justice." Sotirion v. United States, 617 F.3d 27, 33 (1st Cir. 2010) (internal quotations and citations omitted). To determine whether Bernabe knowingly and voluntarily waived his appellate rights, the Court reviews the text of the Agreement and the plea colloquy. Id. The Agreement should "contain[] a clear statement elucidating the waiver and delineating its scope," United States v. Teeter, 257 F.3d 14, 24 (1st Cir. 2001), and during the plea hearing the Court must comport with Rule 11 regarding same. See Fed. R. Crim. P. 11(b)(1)(N) (requiring that before a court accepts a plea, the district court inform the defendant of any terms in the plea agreement that waive the right to appeal or collaterally attack the sentence).

Here there is no indication, nor does Bernabe argue, that the Agreement was not voluntary and knowing. The Agreement contained a clear statement that informed Bernabe of his appellate rights and those he was waiving. D. 399 ¶ 6(a)-(b). The agreement clearly stated that Bernabe "agree[d] not to file a direct or appeal in a future proceeding (collateral or otherwise) any sentence of imprisonment of 87 months or less." Id. ¶ 6(d). Additionally, during the change of plea colloquy, the Court confirmed his understanding of such waiver and that he had discussed these terms with his counsel. D. 787 at 14-15. During his colloquy, Bernabe also indicated that he was "fully satisfied with the counsel, representation, and advice" provided. D. 787 at 8. Based on the Agreement, which contained a clear statement elucidating the waiver and defining its scope, and the change of plea colloquy, where the Court sufficiently informed Bernabe that he was waiving

6

certain rights to appeal his conviction and sentence and he indicated that he understood same, Bernabe voluntarily and knowingly waived his right to appeal his sentence. See Portway v. United States, 105 F. Supp. 3d 127, 128-29 (D. Mass. 2015) (explaining that the defendant voluntarily waived his right to collaterally attack the sentence because the signed plea agreement "elucidate[d]" the waiver and scope, and the defendant indicated to the Court that he understood that he was agreeing not to challenge the sentence).

### B. Bernabe's Counsel Was Effective

Even the Agreement did not bar him from bringing this § 2255 motion as it relates to any alleged ineffective assistance of counsel, Bernabe's claims are without merit and still fail. To demonstrate ineffective assistance of counsel, a petitioner must show that: "(1) 'counsel's representation fell below an objective standard of reasonableness' and (2) 'there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.'" United States v. Constant, 814 F.3d 570, 578 (1st Cir. 2016) (quoting Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)). Reasonableness is viewed "as of the time of counsel's conduct." Strickland, 466 U.S. at 690. Judicial scrutiny of a counsel's representation and performance must be "highly deferential" and the Court should make "every effort . . . to eliminate the distorting effects of hindsight." Bell v. Cone, 535 U.S. 685, 698 (2002) (internal quotation marks omitted). Moreover, even deficient representation does not violate the Sixth Amendment if there was no actual prejudice. See United States v. McGill, 11 F.3d 223, 226 (1st Cir. 1993).

> *1. Defense Counsel Was Not Ineffective for Failing to Request a Mitigating Role Adjustment*

Bernabe first argues that his attorney was ineffective because counsel failed to argue a downward adjustment for his minimum participation in the "alleged conspiracy." D. 838 at 4. Bernabe must "overcome the presumption that, under the circumstances" counsel's failure to argue

7

a mitigating role adjustment was a sound trial strategy. See Phoenix v. Matesanz, 233 F.3d 77, 81 (1st Cir. 2000).

The USSG mitigating role adjustment section provides that a base offense level should be decreased by four levels if a defendant is a "minimal participant" in a criminal activity, or it should be decreased by two levels if a defendant is a "minor participant." U.S.S.G. § 3B1.2(a)-(b). If a defendant falls between being a minimal participant and a minor participant, the offense level should be decreased by three levels. Id. § 3B1.2(b). The notes to the USSG indicate that a minimal participant adjustment is intended to "cover defendants who are plainly among the least culpable of those involved in the conduct of a group." Id. § 3B1.2 cmt. n.4. A "defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimum participant." Id. A minor participant is defined as someone "who is less culpable than most other participants . . . but whose role could not be described as minimal." Id. § 3B1.2 cmt. n.5. To qualify as a minor participant, "a defendant must show that he is both less culpable than most of his cohorts in the particular criminal endeavor and less culpable than the mine-run of those who have committed similar crimes." United States v. Melendez-Rivera, 782 F.3d 26, 28 (1st Cir. 2015). Further, a downward adjustment for a minimal participant is not supposed to be frequently imposed. See Cornejo v. United States, No. 93-1830, 1994 WL 140412, at *1 (1st Cir. Apr. 19, 1994) (explaining that a minimal participant adjustment would be appropriate "for someone who played no other role in a very large drug smuggling operation than to offload part of a single marihuana shipment"); United States v. Cabrera, 567 F. Supp. 2d 271, 278 (D. Mass. 2008) (likening a minimal role participant to that of a delivery man in a drug conspiracy). In Cornejo, the court ultimately concluded that defense counsel's performance in not requesting a mitigating role adjustment was not deficient because the petitioner

8

failed to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Cornejo, 1994 WL 140412, at *2 (internal quotation marks and citations omitted).

Bernabe has not shown that his counsel's representative at his sentencing was deficient. Counsel argued that Bernabe was less culpable than the government alleged, but the Court rejected that contention. D. 788 at 34. For example, in Objection 6 to the PSR, counsel originally argued that Bernabe never participated in kilogram quantity transactions with anyone in the Pena drug trafficking organization. PSR at 28. Counsel also argued that Bernabe was not listed within the drug ledger that officers found when they searched an office that had connections to the drug trafficking organization. PSR at 29. In the supplemental sentencing memorandum, counsel argued that Bernabe was not responsible for more than two kilograms of cocaine. D. 581 at 3. Finally, counsel argued that the government misinterpreted a phone call between Pena and Bernabe where they spoke about the price of a kilogram of cocaine and that they were "the ones that [Bernabe] like[d]," D. 585 at 4 (alterations in the original). To that point, defense counsel argued that "the prices of ounces of cocaine and grams of cocaine are reflective of the price of the original kilogram," so it was logical for Pena and Bernabe to have a conversation regarding the price of kilograms when Bernabe was only an ounce customer. D. 581 at 3.

Counsel thoroughly argued the contest issued (preserved by counsel for Bernabe in the Agreement and at the plea colloquy) of how much cocaine should have been attributable to Bernabe and was not required to make further arguments that were meritless. See United States v. Victoria, 876 F.2d 1009, 1012-13 (1st Cir. 1989) (explaining that failing to raise "meritless" points did not amount to ineffective assistance). In Isabel v. United States, 980 F.2d 60 (1st Cir. 1992), the First Circuit rejected a claim of ineffective assistance of counsel when counsel had been

"vigorous" with their multiple filings and motions, and argued "ably and earnestly" for a downward departure. Id. at 64-65. In addition, the court in Isabel noted that under the circumstances it "made no sense" for counsel to argue that the defendant was a minor or minimal participant because the evidence showed otherwise. Id. at 65. Similar to Isabel, the Court here noted counsel's "thorough[ness]" and "advocacy" despite the court rejecting some of counsel's arguments. D. 788 at 6, 32. Accordingly, counsel's decision to forgo any argument for a mitigating role adjustment, and include arguments related to Bernabe's overall role, does not fall below an objective standard of reasonableness. See Isabel, 980 F.2d at 64-65.

        2.     *Defense Counsel Was Not Ineffective for Failing to Separate Bernabe from the Charged Conspiracy or Advocate that Bernabe Was a Solo Buyer*

Bernabe additionally argues that (1) counsel failed to separate Bernabe from the alleged conspiracy and (2) he failed to raise that Bernabe was a solo buyer/seller and not a co-conspirator. D. 838 at 5-6. Bernabe contends this amounts to ineffective assistance of counsel. Id. This argument is not supported by the record or the Court's findings. For instance, Bernabe himself admitted to the Court that he "conspired with Mr. Pena and others to possess with intent to distribute and to distribute cocaine," D. 787 at 19-20, and has not alleged in his § 2255 motion that his guilty plea on the conspiracy charge was involuntary or not knowingly entered. See United States v. Butt, 731 F.2d 75, 80 (1st Cir. 1984) (explaining that "[t]he accuracy and truth of an accused's statements at a Rule 11 proceeding in which a guilty plea is accepted are 'conclusively' established by that proceeding unless and until he makes some reasonable allegation why this should not be so") (internal quotation and citations omitted); United States v. Santiago Miranda, 654 F.3d 130, 138 (1st Cir. 2011) (stating that "a court is entitled to give weight to the defendant's statements at his change-of-plea colloquy" when there is not "good reason" to disregard them). In addition, as Probation reported and the Court concluded, there was sufficient evidence to suggest

that Bernabe was part of a drug conspiracy. See D. 787 at 17-18; D. 788 at 19-23, 33-34; PSR ¶¶ 10-11, 14, 17, 22, 30-31.

Bernabe's own admission that he bought drugs from Pena implicates him in the conspiracy. D. 787 at 19-20; cf. Corporán-Cuevas v. United States, No. 02-cv-2154-PG, 2003 WL 22038647, at *11 (D.P.R. May 14, 2003) (concluding that "it cannot be said that [the petitioner's] attorney was ineffective when he did not argue against the three point enhancement given the overwhelming evidence to support said adjustment"). Thus, there was no need for counsel to separate Bernabe from the conspiracy in the sentencing phase of his case. D. 787 at 19; see Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999) (holding that in the case of a § 2255 motion where the defendant argued that counsel should have properly objected to the introduction of inculpatory evidence, "[c]ounsel's performance was not deficient" because the argument would have been "futile").

Bernabe's claim fails for an additional reason. Counsel did argue that Bernabe's role in the operation was not as extensive as the government maintained. See D. 581 at 1-3. For example, in Objection 13, counsel argued that Bernabe was not responsible for more than two kilograms of cocaine, and specifically objected to Probation's assertion that Bernabe conducted transactions with a cooperating witness, and Christian Moreta, a co-defendant. PSR at 29-32. Additionally, counsel objected to any reference of someone named "Pablin" being Bernabe, in an effort to minimize Bernabe's role in the conspiracy and its operations. PSR at 28. Counsel also maintained in the supplemental sentencing memorandum that Bernabe's nickname was Pablin, but that Pablin was a common nickname and that the Pablin that was involved in kilogram-quantity transactions was not Bernabe. D. 581 at 2. In the supplemental sentencing memorandum counsel also contended that the scope of Bernabe's participation was not as wide as the government argued because his involvement was limited to ounce-sized drug transactions with Pena. D. 581 at 1.

At the sentencing hearing on October 23, 2014, counsel further challenged the ledgers that supposedly detailed the amount of cocaine attributed to Bernabe. D. 788 at 17-18. Counsel argued that no evidence existed as to what the ledgers were, and the information discerned from the ledgers is the government's interpretation and should not be used against Bernabe. Id. at 17. These arguments by counsel were an attempt to minimize Bernabe's role, while maintaining that Bernabe could still be guilty of being part of the conspiracy as he had pled. See D. 581 at 1.

Bernabe fails to show that his counsel's actions were objectively unreasonable. See McGill, 11 F.3d at 227 (explaining that "[t]o avoid the shoals of ineffective assistance, an attorney's judgment need not necessarily be right, so long as it is reasonable"). After a guilty plea, it was reasonable for defense counsel to decide not to argue that Bernabe was not part of the conspiracy to which Bernabe had pled guilty. Further, Bernabe has not shown that this choice was not sound trial strategy, where counsel chose to attempt to minimize the extent of Bernabe's role, rather than completely separate him from the conspiracy. The Court thus concludes that Bernabe has not demonstrated that counsel's performance fell below an objective standard of reasonableness. Cf. Dennis v. United States, No. 10-cv-12166-GAO, 2012 WL 5875119, at *1-2 (D. Mass. Nov. 19, 2012) (explaining that it was valid for a court to impose an Armed Career Criminal enhancement in sentencing and it did not constitute ineffective assistance when counsel did not advance defendant's argument that the imposition of the enhancement was improper); De-La-Cruz v. United States, 865 F. Supp. 2d 156, 162 (D.P.R. 2012) (explaining that counsel's failure to request a downward adjustment due to the defendant's alleged acceptance of responsibility did not rise to the level of ineffective assistance).

3. *Bernabe Has Not Shown Prejudice Under Strickland*

Even if Bernabe's counsel was ineffective in the sentencing phase of this criminal case— which he was not—Bernabe's § 2255 motion still fails. This is because Bernabe cannot

demonstrate prejudice under the second prong of the Strickland test. To demonstrate prejudice, the petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. When this claim is raised as to potential sentencing prejudice, the defendant must demonstrate that "absent the [counsel's] errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant" the sentence. United States v. Sampson, 820 F. Supp. 2d 202, 220 (D. Mass. 2011).

Bernabe has not met the burden of showing that if counsel argued a downward adjustment under § 3B1.2 it had a reasonable probability of leading to a different sentence. See Strickland 466 U.S. at 695-96 (placing the burden on the defendant to show that it is "reasonably likely" that the decision reached would have been different if not for the errors). First, if his counsel argued for a two-level downward adjustment for his mitigating role (so that the base offense level was 30) and if the Court had granted it, there would have a total adjusted level of 27 (down to level 25 in consideration of the pending USSG amendment), the sentencing range would have been 57 to 71 months. D. 848 at 12; see U.S. Sentencing Guidelines Manual § 5A Sentencing Table. Thus, Bernabe's imposed sentence of 68 months would still be a sentence within the guideline range Bernabe now argues he should have received and a sentence this Court may have imposed. Bernabe thus fails to show that there is a reasonable probability that the outcome would have been different.

Second, there is no reason to believe that the Court would have accepted a mitigating role adjustment argument. See United States v. Ortiz, 966 F.2d 707, 717 (1st Cir. 1992) (explaining that even though the defendant was only charged with aiding and abetting a sale he was not entitled to a mitigating role adjustment). Instead, the Court stated that even if Bernabe was not the most

culpable in the conspiracy, his role was not as minimal as counsel argued. D. 788 at 33-34. At the October 23, 2014 sentencing hearing the Court explained that Bernabe would not be sentenced "at the level of the most culpable individuals," but comparably to the sentences given to other defendants whose roles the Court determined were similar to Bernabe's. D. 788 at 36; see United States v. Ruiz-del Valle, 8 F.3d 98, 104 (1st Cir. 1993) (explaining that a "role in the offense" determination is fact-bound and a district court's decision that the defendant was a leader in the scheme was proper). In particular, the Court noted that co-defendant Polanco's role was similar to Bernabe's, D. 788 at 36, and he received a 70-month sentence. D. 489 at 2. Further, the Court explained that a sentence of 68 months was appropriate based on the evidence, D. 788 at 23, 34, and the USSG sentencing range of 70 to 87 months based on the total offense level of 27. D. 788 at 35, 37. The 68-month sentence was below the government's recommendation of 78 months and below the applicable GSR, and Bernabe has not shown that the Court was reasonably likely to have accepted a mitigating role adjustment argument and would have subsequently sentenced Bernabe below 68 months that it imposed.

## V. Certificate of Appealability

Bernabe must demonstrate "a substantial showing of the denial of a constitutional right" to receive a certificate of appealability. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). To do so, Bernabe must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000); Bly v. St. Amand, 9 F. Supp. 3d 137, 164-65 (D. Mass. 2014). Given the analysis of the factual record and the applicable law, the Court does not believe that reasonable jurists could differ as to how Bernabe's § 2255 petition should have been resolved. For this reason, the Court is not inclined to issue a certificate of appealability, but will give petitioner until June 22, 2017 to

file a memorandum not to exceed five (5) pages that addresses whether a certificate of appealability is warranted. Pursuant to Rule 11(a) governing § 2255 proceedings, if no such memorandum is received the Court will issue a notice of denial of the certificate of appealability.

## VI. Conclusion

For the foregoing reasons, the Court DENIES Bernabe's habeas petition under § 2255, D. 838.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge